IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DOMINION FINANCIAL SERVICES, LLC, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-22-00705 |
| ALEXANDER PAVLOVSKY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

Dominion Financial Services, LLC ("Dominion"), a lending company, brought this action against Defendants Alexander Pavlovsky, Konstantin Pavlovsky, Willman Jose Cabrera (collectively the "Defendants"), and several companies owned by or affiliated with the Defendants.[1] (ECF No. 1.) Dominion alleges that the Defendants defrauded it by artificially inflating the prices of eight commercial properties, obtaining loans from Dominion at the inflated prices, making draw requests from those loans for construction expenses, and then using the loaned funds for other purposes in violation of their contracts with Dominion. (*Id.*) Presently pending before the Court is Defendant Alexander Pavlovsky's Motion to Set Aside the Order of Default that was entered against him on July 15, 2022. (ECF Nos. 46, 40.) The Motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth in this Memorandum, a separate Order shall issue denying the Motion.

### *I. Factual Background and Procedural History*

---

[1] Dominion also sued Independent Title of Fort Lauderdale, Inc., a title company that was engaged to facilitate the Defendants' real estate transactions. (ECF No. 1.) Dominion has since voluntarily dismissed Independent Title from this action without prejudice. (*See* ECF No. 52.)

1

Dominion issues commercial and residential real estate loans throughout the United States. (Compl. ¶ 1, ECF No. 1.) It alleges that between March and August of 2021, it extended eight commercial loans, each in the amount of more than one million dollars, to companies owned by either Alexander Pavlovsky or his father Konstantin (collectively the "Pavlovskys") for the purchase of seven properties in Florida and one property in New York. (*See generally* Compl.) Dominion claims that the Pavlovskys obtained these loans as part of an agreement with their associate Willman Jose Cabrera to defraud Dominion out of millions of dollars. (*Id.*) The Complaint alleges that Mr. Cabrera bought the properties and sold them to the Pavlovskys shortly thereafter at extremely inflated prices—for instance, one property was allegedly purchased by Mr. Cabrera for $149,000 and sold to the Pavlovskys for $1,300,000 just a month later. (*Id.* ¶ 57.) The Pavlovskys would then allegedly request disbursements of hundreds of thousands of dollars from Dominion to fund construction at the properties, but would then perform only minor work worth far less than the amounts disbursed. (*See, e.g., id.* ¶ 100.) Alexander Pavlovsky allegedly provided Dominion with falsified construction permits for five of the properties in order to induce it to disburse the funds. (*Id.* ¶¶ 116–120.)

On March 22, 2022, Dominion brought this action against nineteen entities[2]—primarily the Defendants and their companies—claiming fraud as well as breach of contract for each of the eight loans at issue. (*See generally id.*) Dominion seeks compensatory and punitive damages and injunctive relief in the form of an asset freeze for all Defendants. (*Id.*)

Exhibits submitted by Dominion indicate that prior to filing suit, when counsel for Dominion emailed Alexander Pavlovsky on March 9, 2022, to arrange a meeting with his attorney, he replied, "James Lisa Esq. [w]ill be in touch. He is my attorney." (Opp'n Mot. Set Aside Default

---

[2] Because the Motion presently pending before the Court concerns only Defendant Alexander Pavlovsky, the Court will detail the procedural history of the case only as it pertains to that Defendant.

2

Ex. A, ECF No. 47-1.) During a March 29 telephone call with Dominion's counsel, attorney James Lisa "agreed to accept service on behalf of Alexander Pavlovsky and Konstantin Pavlovsky," and he was served later the same day. (*Id.*) On April 19, when Dominion's counsel emailed Mr. Lisa to alert him that the Pavlovskys' answer was due, he replied, "We will be filing today," and sent Dominion's counsel a document entitled "Answer to Complaint with Affirmative Defenses." (*Id.*) Despite these communications, the record shows that, to date, Mr. Lisa has entered no appearance in this action and no Answer has been filed by the Pavlovskys.

On May 11, Dominion moved for entry of default against the Pavlovskys and six of their companies[3] pursuant to Federal Rule of Civil Procedure 55(a), claiming that the Pavlovskys had been served through their counsel on March 29 and had failed to file a responsive pleading within twenty-one days as required by Federal Rule of Civil Procedure 12(a)(1)(A)(i). (ECF No. 16.) Then, on June 16, because of the confusion surrounding Mr. Lisa's lack of appearance on the record, Dominion filed a Request for Renewed Summonses for the Pavlovskys and those six companies, arguing that duplicate service was necessary "so that there will be no dispute" that they were served.[4] (ECF No. 30.) The following day, Dominion's counsel emailed Mr. Lisa asking him to "confirm that [he] accepted service of the Complaint on March 29th," to which Mr. Lisa replied on June 21, "I have accepted[.]" (Opp'n Mot. Set Aside Default Ex. A.)

Meanwhile, also around June 16, Dominion engaged a process server to serve the original summons on Alexander Pavlovsky at his apartment in Miami Beach, Florida. (Aff. of Cesar Carias, Opp'n Mot. Set Aside Default Ex. C, ECF No. 47-3.) According to the server's Affidavit, on the afternoon of June 16, the server knocked at the apartment door, heard a man's voice, and

---

[3] The Pavlovskys are the registered agents for these companies. (ECF No. 1.)
[4] This Motion was later terminated by an amended motion seeking an extension of time to serve only Konstantin Pavlovsky and the company for which he is the registered agent. (ECF No. 36.)

received no answer; when he asked the building's front desk to confirm that Alexander Pavlovsky was home, the attendant said that the Defendant had just called "to ask why the front desk let the server inside the building." (*Id.*) The server knocked at the apartment door later that evening but received no reply despite seeing lights on, hearing movement, and noticing someone looking through the peephole. (*Id.*) The server made two more unsuccessful attempts at service at the apartment on June 17 and June 18. (*Id.*) Finally, on June 20 at about 3:30pm, the server encountered a man who he believed to be Alexander Pavlovsky, based on photographs from social media that he confirmed with the front desk were indeed pictures of the Defendant. (*Id.*) When the server approached the man in the hallway outside of Alexander Pavlovsky's apartment, "he sped off into the stairwell." (*Id.*) When the man returned to the same hallway at about 3:40pm, he claimed not to be Alexander Pavlovsky but immediately entered the apartment belonging to the Defendant. (*Id.*) As the man shut the apartment door, the server "let him know that he had been served and dropped the documents at the door." (*Id.*)

On July 12, after Alexander Pavlovsky again failed to file a responsive pleading within twenty-one days of allegedly having been served on June 20, Dominion again moved for entry of default against Alexander Pavlovsky and the companies for whom he is the registered agent. (ECF No. 39.) The Clerk of Court entered an Order of Default against Alexander Pavlovsky and those companies on July 15. (ECF No. 40.)

On August 15, Ian Thomas Valkenet entered an appearance as counsel for Alexander Pavlovsky, (ECF No. 43), and filed this Motion to Set Aside Default as to Alexander Pavlovsky only. (ECF No. 46.) The Motion asserts that Alexander Pavlovsky could not have been served at his apartment at 3:40pm on June 20 because he was away from home for the entire afternoon on that date. (*Id.*) Alternatively, citing a discrepancy in one of the process server's multiple affidavits

4

suggesting he may have actually executed service on June 21, the Motion claims that service was not timely pursuant to Federal Rule of Civil Procedure 4(m), which requires service be perfected "within 90 days after the complaint is filed"—here, by June 20. (*Id.*) Finally, the Motion claims that Alexander Pavlovsky was not at home to receive service on June 21 because he was at work in another city. (*Id.*) In support of these claims, Alexander Pavlovsky submitted his own sworn affidavit, a receipt from rideshare app Uber allegedly detailing his trip away from home on the afternoon of June 20, and the sworn affidavit of a business associate who claims to have been out of town with him on June 20 and 21. (*Id.* Exs. 1–3, ECF Nos. 46-1–46-3.) The Motion does not mention attorney James Lisa, Alexander Pavlovsky's March 9 representation to Dominion that Mr. Lisa was his lawyer, or Mr. Lisa's various communications with Dominion's counsel. (*See generally* Corrected Mot. Set Aside Default, ECF No. 46.) It also makes no attempt to address the claims of fraud and breach of contract asserted by Dominion in its Complaint. (*Id.*)

In its Response, Dominion asserts that Alexander Pavlovsky "has been aware of this lawsuit and has been evading service since the inception of this matter," that service was proper on Mr. Lisa as Alexander Pavlovsky's apparent attorney, and that the Defendant was properly served again on June 20. (ECF No. 47.) Dominion also argues that, if the default is set aside, Mr. Valkenet should "be ordered to accept service for all other entities for which Mr. Pavlovsky is the registered agent" as well as for Konstantin Pavlovsky and the entity for which he is the registered agent,[5] and that sanctions should be imposed on Alexander Pavlovsky in the amount of the nearly $22,000 in costs Dominion accrued in effecting duplicate service. (*Id.*)

---

[5] Defendant Konstantin Pavlovsky has also failed to file any responsive pleadings in this action to date. On September 6, 2022, the Court granted Dominion's motion for alternative service on Konstantin Pavlovsky, (ECF No. 48), and Dominion effected alternative service on September 12. (ECF No. 53.)

5

In his Reply, Alexander Pavlovsky claims that "the actions of attorney Lisa were not authorized," that Dominion "tacitly acknowledge[d] as much" by duplicating service, and that service on Mr. Lisa thus "failed." (ECF No. 50.) He further asserts that it would be improper to "compel[ ] the attorney for one party to accept service on behalf of other parties in the same case," and that Dominion is not entitled to recoup its costs because it failed to "elect alternate service on Mr. Pavlovsky" rather than pursue the costlier route of in-person service. (*Id.*)

## *II. Motion to Set Aside Default*

In support of his Motion to Set Aside Default, Alexander Pavlovsky claims that there is "no evidence of dilatory behavior" on his part that would support the entry of a default judgment against him. (ECF No. 46.) The Court disagrees. The record reflects that the Defendant has acted since the inception of this action to evade and confuse the legal process. Despite the Court's preference for deciding cases on their merits whenever possible, in view of Alexander Pavlovsky's conduct, it will allow the Order of Default to stand.

### *A. Legal Standard*

Federal Rule of Civil Procedure 55(c) provides that a court "may set aside an entry of default for good cause." The decision whether to set aside an entry of default pursuant to a Rule 55 motion "lies largely within the discretion of the trial judge." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (quoting *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Accordingly, "Rule 55(c) motions must be 'liberally

construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Id.* at 421 (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)).

Courts consider six factors when determining whether to set aside an entry of default pursuant to Rule 55 (the "*Payne* factors"): (1) "whether the moving party has a meritorious defense" to the nonmovant's claims, (2) "whether it acts with reasonable promptness," (3) "the personal responsibility of the defaulting party," (4) "the prejudice to the party," (5) "whether there is a history of dilatory action," and (6) "the availability of sanctions less drastic." *Payne*, 439 F.3d at 204–05. "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party" in the underlying action. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

### B. Analysis

The *Payne* factors as applied to this Defendant weigh heavily in favor of allowing the Order of Default to stand. As to the first factor, the Court acknowledges that Alexander Pavlovsky has proffered evidence to support his defense that he was never *served*. (*See* Corrected Mot. Set Aside Default Exs. 1–3; Reply Supp. Mot. Set Aside Default, ECF No. 50.) However, he has made no argument whatsoever, as he must, that he has a meritorious defense to Dominion's *underlying allegations* of fraud or breach of contract. (*See generally* Corrected Mot. Set Aside Default, Reply Supp. Mot. Set Aside Default.) Whether Defendant's counsel misunderstood the first *Payne* factor or misrepresented it, the Court finds that Alexander Pavlovsky has not made the requisite showing.

As to *Payne* factors two through five, the Court is not persuaded by the Defendant's arguments. He claims that he "has acted with reasonable promptness" in this matter—citing only his timely response to the Clerk's entry of default and ignoring what the record suggests has been

7

a months-long effort to delay this proceeding by evading service. (Corrected Mot. Set Aside Default.) Any prejudice to the Defendant that would result from letting the default stand might be real, but this factor in his favor is outweighed by the others. Most important, the Court finds on this record that Alexander Pavlovsky's assertion that there is "no evidence of [his] dilatory behavior" is incorrect, and that his behavior and misrepresentations reflect poorly as to his personal responsibility for the default.

Even in view of the overarching principle that disputes brought before this Court should be litigated on their merits, and the availability of sanctions less drastic—here, the potential imposition of costs associated with Dominion's considerable efforts at service—the Court finds that it would be inappropriate to excuse behavior as evasive as Alexander Pavlovsky's by allowing him another opportunity to answer Dominion's claims. Accordingly, the Defendant's Motion to Set Aside Default is denied. Because the default will stand, the Court need not consider Dominion's alternative requests for relief.

### III. Conclusion

For the foregoing reasons, a separate Order shall issue denying Defendant Alexander Pavlovsky's Motion to Set Aside Default. (ECF No. 56.)

DATED this ___30___ day of September, 2022.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge

8